# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **LEAR CORPORATION,**   ) | |
| ) | |
| *Plaintiff*,   ) | |
| ) | **Case No. 2:09-cv-00993** |
| vs.   ) | |
| ) | **Judge James L. Graham** |
| ) | **Magistrate Judge Mark R. Abel** |
| **TS TECH USA CORPORATION**,   ) | |
| **TS TECH NORTH AMERICA, INC.** and   ) | |
| **TS TECH CANADA, INC.**   ) | |
| ) | |
| *Defendants*.   ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING REEXAMINATION

**I.      INTRODUCTION**

Defendants TS Tech USA Corporation, TS Tech North America, Inc. and TS Tech Canada, Inc., ("TS Tech" or "Defendants") hereby request that the Court issue an Order staying all litigation in this case until completion of the pending *ex parte* reexamination of the patent-in-suit by the U.S. Patent and Trademark Office ("PTO").  As described below, a stay is warranted because (a) the reexamination of the patent-in-suit will result in amendment or cancellation of most, if not all, of the claims at issue in this case which will simplify the issues in this case and streamline or, indeed, obviate the need for a trial; (b) it will reduce or eliminate the burden of litigation on the parties and this Court; and (c) it will not prejudice or disadvantage Lear because this case is in its very early stages.

**A.      Factual Background**

Defendants TS Tech USA Corporation, TS Tech North America, Inc. and TS Tech Canada, Inc., ("TS Tech" or "Defendants") are manufacturers of automobile seats which are supplied to Honda.   In September 2007, Plaintiff Lear Corporation ("Lear" or "Plaintiff") filed this lawsuit in the Eastern District of Texas ("ED Texas") against Defendants ("the Texas action") alleging infringement of its U.S. Patent No. 5,378,043 ("the '043 patent"), which is directed to a vehicle pivotal headrest.  (Dkt. 1).[1]

Shortly after the Texas action was filed, Defendants moved under 28 U.S.C. § 1404(a) to transfer venue of the case to this Court, which the ED Texas denied in September 2008. (Dkt. 43).  Defendants then filed a petition for mandamus with the U.S. Court of Appeals for the Federal Circuit ("CAFC"), requesting that the CAFC vacate the ED Texas order denying the motion to transfer and order the ED Texas to transfer the case to this court.  (Dkt. 56).  The

---

[1] References to "Dkt.__" refer to the docket entries in this matter (Case No. 2:09-cv-00993).

CAFC granted Defendants' petition for mandamus on December 29, 2008 and ordered the ED Texas to transfer the case to this court. *In re TS Tech*, 551 F.3d. 1315 (Fed. Cir. 2008) (Dkt. 61). The ED Texas delayed transferring the case for nearly a year and, during that time, Plaintiff Lear made no effort to move this case forward and have it transferred to this Court. On October 23, 2009, the ED Texas finally transferred the Texas action to this Court (Dkt. 63).

While the Texas action was pending, TS Tech contended that it did not infringe the '043 patent and that the '043 patent was invalid in view of certain prior art references. The claim construction hearing in the Texas action was scheduled to take place in May 2010 and thus no claim construction order issued in the Texas action. Other than some initial document discovery, there was no substantial discovery conducted in the Texas action.

Also, while the Texas action was in its early stages, a request for *ex parte* reexamination based on three of the prior art references asserted by Defendants in the Texas action was filed with the U.S. Patent and Trademark Office ("PTO") in August 2008. The PTO granted the request for *ex parte* reexamination as to all of the twelve claims of the '043 patent in October 2008 (Ex. 1) and issued an Office Action in May 2009 (Ex. 2) rejecting <u>all</u> the claims of the '043 patent as anticipated under 35 U.S.C. §102(b).[2] In July 2009, Lear filed an Amendment in response to the Office Action, in which Lear cancelled one claim, amended six others and added 43 new claims (Ex. 3).

As described in more detail below, the reexamination proceedings pending before the PTO will result in amendment, cancellation and/or invalidation of most, if not all, of the claims at issue in this case. In addition, the reexamination could result in new issued claims that Plaintiff may assert against Defendants. Therefore, for the reasons described in detail below,

---

[2] Exhibits 1-7 are appended to the accompanying Declaration of Vito J. DeBari and are referenced throughout this memorandum as "Ex. __".

Defendants request that the Court issue an Order staying all litigation in this case until the pending reexamination of the '043 patent is concluded.

      **B.**      **The Reexamination Process**

Patent reexamination provides the PTO with the ability to "correct errors made by the government, to remedy defective governmental (not private) action, and if need be, to remove patents that never should have been granted." *PatlexCorp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985). A reexamination proceeding may eliminate the need for a trial of a patent claim if the PTO cancels the claim or invalidates the patent in its entirety. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Moreover, past damages are often disallowed when patent claims are substantively amended during reexamination. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998). Also, where claims are newly added or amended during reexamination, persons practicing those new or amended claims prior to their issuance may be entitled to continue to do so (*i.e.*, may not be sued for infringement) in some circumstances. 35 U.S.C. § 252, 307. Therefore, it is not surprising that the Court of Appeals for the Federal Circuit views reexamination as a benefit because (a) it provides a means for settling validity issues that is less time-consuming and less expensive than litigation, (b) allows courts to refer to the PTO's expertise in questions of validity and (c) reinforces confidence in the certainty of patent rights by affording an opportunity to review patents of questionable validity. *See In re Portola Packaging*, 100 F.3d 786, 789 (Fed. Cir. 1997).

Patent reexaminations are governed by 35 U.S.C. § 301 et seq. Reexamination may be initiated at any time during the term of a patent by any person who files a request for reexamination. 35 U.S.C. § 302; MPEP § 2210 (Ex. 4). In fact, it is completely appropriate for a party in litigation to request reexamination of the patent-in-suit. *Ohio Willow Wood Co. v. Alps South Corp.*, NO. 2:04-CV-1223, 2008 WL 4683222, *1 (S.D. Ohio Oct. 21, 2008), *stay granted*

3

*on reconsideration*, 2008 WL 5076818 (S.D. Ohio Nov. 21, 2008)); *Tdata Inc. v. Aircraft Tech. Publishers*, No. 2:03-cv-264 & No. 2:04-cv-1072, 2008 WL 77741, *2 (S.D. Ohio Jan. 8, 2008); *Avery Dennison Corp. v. Alien Tech. Corp.*, No. 09CV795, 2009 WL 2169211, *1 (N.D. Ohio July 20, 2009); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06CV0253, 2008 WL 696888, *1 (N.D. Ohio March 12, 2008); *see also Ethicon v. Quigg*, 849 F.2d 1422, 1425-29 (Fed. Cir. 1988).

    A request for reexamination includes written prior art and reasons why the PTO should reexamine the patent claims in light of the prior art.  35 U.S.C. 302; MPEP § 2210 (Ex. 4). When a request for reexamination is made, the PTO determines whether the request and the submitted prior art raise a substantial new question of patentability.  Reexamination proceeds with "special dispatch", particularly where, as here, the patent being reexamined also is the subject of a pending litigation.  *See* 35 U.S.C. 307; 37 C.F.R. § 1.550(a); MPEP § 2261; *Ethicon*, 849 F.2d at 1425-26.  A reexamination concludes when the PTO does one of the following with respect to each claim reexamined: (1) uphold the claim in its entirety, (2) upholds a narrower amended version of the claim or (3) cancels the claim.  *See* 35 U.S.C. § 307.

    In light of the discovery of prior art that was not considered by the PTO during the original prosecution of the '043 patent, it is appropriate and efficacious for the PTO to reexamine the claims of the '043 patent to determine their validity and scope in light of such prior art.  In fact, the PTO already has determined that the reexamination request and the prior art submitted raise substantial new questions of patentability as to <u>all</u> the claims of the '043 patent and thus ordered their reexamination in October 2008.  (Ex. 1).  Significantly, the PTO also issued an Office Action in May 2009 rejecting <u>all</u> the claims of the '043 patent as anticipated under 35 U.S.C. §102(b).  (Ex. 2)  In response to the PTO Office Action, Lear filed in July 2009

4

an Amendment in which Lear cancelled one claim, amended six others and added 43 new claims (Ex. 3). Importantly, of the three original independent claims in the '043 patent (claims 1, 10 and 11), one has been cancelled (claim 1) and two have been amended (claims 10 and 11). (*Id.*)

If the PTO maintains its rejection of the original claims of the '043 patent and also finally rejects the new claims Lear has submitted, the '043 patent is effectively invalidated, and this case may be dismissed. Moreover, even if some of the amended or new claims survive reexamination, it is those amended claims, and not the claims of the '043 patent as presently written, that may need to be litigated in this case. Indeed, because Lear already has cancelled one of the independent claims of the '043 patent and amended the remaining two, the original independent claims of the '043 patent which currently are at issue in this case <u>will</u> <u>not</u> <u>survive</u> the reexamination.

For these reasons, continuing to litigate this case before the reexamination is concluded makes no sense, as it is certain to waste the Court's and the parties' time and resources. Accordingly, a stay of this litigation while the reexamination proceeds is appropriate and will serve principles of judicial economy.

## II.   LAW AND ARGUMENT

### A.   The Court Should Exercise Its Discretion And Stay The Litigation Until Reexamination Of The '043 Patent Is Concluded

Given the early stage of this litigation, staying the case until the reexamination of the '043 patent is concluded will not prejudice or disadvantage Lear. Rather, awaiting the outcome of the reexamination will simplify the issues in this case and streamline or, indeed, obviate the need for a trial.

In deciding whether to stay litigation pending reexamination, district courts in this circuit typically consider three factors: (1) whether a stay would unduly prejudice the nonmoving

5

party or present a clear tactical advantage for the moving party; (2) whether a stay would simplify the issues and streamline the trial; and (3) whether discovery is complete and whether a trial date has been set. *Tdata*, 2008 WL 77741, *2 (quoting with approval *Lincoln Elec. Co. v. Miller Elec. Mfg. Co.*, No. 1:06CV02981, 2007 WL 2670039, at *1 (N.D. Ohio Sept.7, 2007)) (citations omitted);[3] *Ohio Willow Wood*, 2008 WL 4683222, *2-3 (same). As demonstrated below, each of these factors weighs heavily in favor of a stay in this case.

### 1. A Stay Will Not Unduly Prejudice or Disadvantage Lear

A stay of this litigation would not unduly prejudice or disadvantage Lear and thus this factor weighs heavily in favor of a stay. Indeed, Lear's actions (or, more accurately, inaction) over the past year contradict any argument that a stay will cause Lear any undue prejudice. As described above, for nearly a year while the ED Texas delayed transferring the case to this Court after it was ordered by the CAFC to do so, Lear never attempted to expedite the transfer of the case and did not otherwise make any attempt to move this case forward. Thus, Lear's own inaction over the last year confirms that a further delay of this case pending reexamination of the '043 patent will not cause Lear any undue prejudice.

Lear can hardly claim that a stay will cause undue prejudice at this early stage of the case, as the case has just been transferred to this Court and there has not been any substantial discovery in the case, other than some initial production of documents, infringement contentions and invalidity contentions required under the local patent rules for ED Texas.[4] Further, Lear

---

[3] Quoting, in turn, *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999), *rev'd in non-relevant part*, 267 F.3d 1361 (Fed. Cir. 2001), *rev'd in non-relevant part*, 61 Fed. Appx. 680 (Fed. Cir. 2003), *rev'd in non-relevant part*, 458 F.3d 1310 (Fed. Cir. 2006).

[4] As a result of Lear's cancellation or amendment of most of the claims of the '043 patent in the reexamination, the infringement and invalidity contentions previously served in the Texas action would at the very least need to be updated, if not re-done entirely, depending upon the outcome of the reexamination, assuming the '043 patent survives reexamination.

cannot say that its future costs associated with this litigation will be increased by the grant of a stay. *See EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05 CV 81 DF, 2006 WL 2501494, *3 (E.D. Tex. July 14, 2006). In fact, Lear's costs will most likely decrease if a stay is granted because, as described above, the reexamination will result in amendment, cancellation or invalidation of claims at issue in this case and thus is likely to reduce or eliminate the cost of litigation.

Staying this case will not only reduce the litigation costs, but it will help avoid a potential discovery dispute which arose in the Texas action while the case was pending there. Specifically, after the '043 patent reexamination was filed while the Texas action was pending, Lear argued in connection with a proposed protective order that its litigation attorneys in this case should be allowed to participate in the pending reexamination of the '043 patent. TS Tech, on the other hand, had sought and still seeks to protect itself from any inadvertent use of TS Tech's confidential information in the reexamination by requiring a "wall" or "prosecution bar" between Lear's litigation and reexamination counsel. Since TS Tech has not yet produced any confidential documents in this case (at Lear's request in order to allow its litigation counsel to participate in the '043 patent reexamination), a stay of this litigation during the reexamination would address all the parties' concerns. Specifically, it would allow Lear's litigation counsel to participate in the pending reexamination of the '043 patent without the risk that TS Tech's confidential information produced in this case is used, inadvertently or otherwise, in the reexamination. Also, Lear would not have to police its litigation counsel during the reexamination to ensure compliance with the terms of a "prosecution bar" which ultimately may be included in the protective order in this case.

Thus, rather than being prejudiced or disadvantaged by a stay, Lear would actually benefit from a stay because Lear (a) would not have to undergo the burden and costs of

7

discovery until such time as the reexamination and the questions of invalidity raised therein are concluded, and (b) would be able to have its litigation counsel participate in the reexamination, as it apparently wishes to do. For these reasons, the requested stay will not cause Lear any prejudice or disadvantage.[5]

### 2. A Stay Would Simplify The Issues And Streamline Trial

A stay pending reexamination is justified where the "outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *Tdata* 2008 WL 77741 at *2 (quoting *Slip Track Sys. v. Metal Lite*, 159 F.3d 1337, 1341 (Fed.Cir.1998)). Here, reexamination is being conducted to review all the claims of the '043 patent, the patentability of which has been questioned by the PTO in light of prior art not considered during the original prosecution of the '043 patent – the same prior art at issue in this litigation.

Importantly, it is not mere speculation that reexamination will affect the scope of the claims of the '043 patent. Specifically, in response to the PTO's May 2009 Office Action rejecting all the claims in the '043 patent (Ex. 2), Lear cancelled one claim, amended six other claims and added 43 new claims. (Ex. 3). Indeed, of the three independent claims of the '043 patent, one has been cancelled and the other two have been amended. *Id*. In light of the fact that all of the '043 patent claims have been rejected by the PTO, there is a strong possibility that many of the claims (if not all) ultimately will be finally rejected or further amended. Continuing to litigate this action when the '043 patent claims are in flux and are likely to be amended or

---

[5] Actually, if this case is not stayed pending reexamination of the '043 patent, TS Tech would be prejudiced because it will be forced to proceed in a litigation involving potentially invalid patent claims. *See Tdata*, 2008 WL 77741, *3.

cancelled is a waste of judicial resources and is highly prejudicial to TS Tech.  Thus, the burden and costs of litigation on the parties and the Court likely can be reduced or eliminated by staying the case pending the final outcome of reexamination.

(a) <u>Reexamination Will Assist The Court With Validity</u>

In light of the fact that the very same prior art involved in this litigation also is being considered by the PTO in the pending reexamination, a stay is the most efficient way to proceed in this case.  In fact, the PTO already has rejected all the claims of the '043 patent as unpatentable over the same prior art references at issue in this case (Ex. 2) and thus a stay clearly makes sense.  Due to the PTO's expertise in deciding issues of patentability, many courts prefer to postpone making final decisions on infringement until the PTO rules on issues before it.  *01 Communique Lab.*, 2008 WL 696888 at *2 (citing *Slip Track*, 159 F.3d at 1341; *Gould*, 705 F.2d at 1342); *Avery Dennison*, 2009 WL 2169211 at *2 ("noting a liberal policy in favor of a stay pending the outcome or reexamination proceedings" (citing *Instituform Techs., Inc. v. Liqui-Force Servs. (USA) Inc.,* No. 08-11916, 2009 WL 1469660, *1 (E.D. Mich. May 26, 2009))); *Bausch & Lomb, Inc. v. Alcon Labs.*, Inc. 914 F. Supp. 951, 953 (W.D.N.Y. 1996).

Indeed, staying this litigation enables the Court to avoid addressing claims that have already been cancelled, amended or found invalid by the PTO, which in turn will streamline and reduce the overall cost of the litigation.  *Tdata*, 2008 WL 77741 at *3-*4 (staying litigation where "this Court's own experience indicate a notable possibility-arguably even a probability-that at least some of the claim involved in this litigation will either be changed or cancelled."); *Avery Dennison*, 2009 WL 2169211 at *2; *see also, Softview Computer Prods. Corp. v. Haworth Inc.*, No. 97 Civ. 8815, 2000 WL 1134471, *3 (S.D.N.Y. Aug. 10, 2000) ("If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified.").

(b) Reexamination Likely Will Eliminate The Need To Try

9

Infringement Of Claims At Issue In This Case

PTO reexamination statistics show that it is highly likely that the final outcome of reexamination will result in either amendment or cancellation of all or at least some of the asserted claims patents-in-suit.  According to recent statistics by the PTO, it has completed 7089 *ex parte* reexaminations as of September 30, 3009.  (Ex. 5, *Ex Parte* Reexamination Filing Data).  Of these reexaminations, the PTO has rejected all claims in 11% of these reexaminations; issued amended claims in 64%; and allowed the original claims in only 25%.  (*Id.*).  Thus, the results of the '043 patent reexamination will very likely have a significant impact on the proceedings of this case.  *See Tdata*, 2008 WL 77741, *4 ("reexamination statistics and this Court's own experience indicate a notable possibility-arguably even a probability-that at least some of the claims involved in this litigation will either be changed or cancelled").  In light of the PTO's rejection of all the claims of the '043 patent and Lear's subsequent cancellation or amendment of most of the claims, it is already a certainty that the reexamination of the '043 patent will fall within the 75% of reexaminations in which the claims of the patent either are rejected or amended.

Significantly, if all of the asserted claims of the '043 patent ultimately are invalidated by the PTO, this case may be dismissed.  Even assuming, however, that some of the claims of the '043 patent survive the reexamination, any further proceedings regarding the '043 patent will have been simplified and streamlined as a result of the reexamination.  Indeed, this is true regardless of the outcome of the reexamination.  As the Federal Circuit has explained, this is because "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is cancelled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."  *Gould*, 705 F.2d at 1342.

Accordingly, granting a stay in this case will save both the Court's and the parties' resources in litigating over issues of validity and infringement that the PTO findings may ultimately render moot.

### 3. A Stay Is Warranted At This Early Stage of The Case

A stay pending reexamination is proper where discovery has not closed and no trial date has been set. *See Avery Dennison*, 2009 WL 2169211 at *3; *Lincoln Elec.*, 2007 WL 2670039, at *2. In fact, courts have not hesitated to order a stay pending reexamination when faced with a reexamination pending during discovery and prior to the setting of a trial date. *See*, *e.g.*, *Lincoln Elec.*, 2007 WL 2670039, at *2; *Microlinc, LLC v. Intel*, No. 2:07-cv-488, D.I. 154 (E.D. Tex. Sep. 16, 2008) (Ex. 6); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007); *Softview Computer Prods. Corp. v. Haworth Inc.*, No. 97 Civ. 8815, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

This case is in its very earliest stages – the only discovery so far has been some minimal document discovery. Given the nascent stage of this litigation, Plaintiff is not so invested in this suit that a stay would cause undue prejudice. *Lincoln Elec.*, 2007 WL 2670039, at *2; *Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004). Indeed, courts have granted stays pending reexamination in cases that were much further along in discovery than this one. *See*, *e.g.*, *Tdata*, 2008 WL 77741, at *2 (stayed proceedings five years after start of litigation, after a *Markman* hearing and decision with discovery nearly complete); *01 Communique Lab.*, 2008 WL 696888, *2 (stayed proceedings when discovery was closed and several summary judgment motions were pending); *Ohio Willow Wood Co. v. Alps South Corp.*, NO. 2-04-CV-1223 (S.D. Ohio Nov. 22, 2006), D.I. 80 (Ex. 7) (stayed proceedings when discovery was closed and dispositive motion deadline also passed) *Middleton, Inc. v. Minn.*

11

*Mining & Mfg. Co.*, 2004 WL 1968669, *1 (S.D. Iowa Aug. 8, 2004) (stayed proceedings eight years after start of litigation and less than two months before trial).

### B. Courts In This District Favor Staying Litigation Pending Reexamination

Courts in this and other districts generally agree that staying patent litigation during reexamination is the best course. *See*, *e.g.*, *Ohio Willow Wood*, 2008 WL 5076818; *01 Communique Lab.*, 2008 WL 696888; *Tdata*, 2008 WL 77741; *Lincoln Elec.*, 2007 WL 2670039; *Ohio Willow Wood*, NO. 2-04-CV-1223, D.I. 80 (Ex. 7).[6] Courts have noted with approval that PTO reexamination proceedings resolve allegations of invalidity with considerably with less expense than litigation. *See Avery Dennison*, 2009 WL 2169211 at *2; *In re Portola Packaging*, 110 F.3d at 789. Even if a reexamination does not completely resolve all of the issues in dispute in the litigation, the parties and the court both benefit from the PTO's expert opinion. *01 Communique Lab.*, 2008 WL 696888 at *2 (citing *Slip Track Systems, Inc. v. Brady*, 159 F.3d 1337, 1341 (Fed. Cir. 1998); *Gould*, 705 F.2d at 1342). Thus, a trial court can avail itself of the PTO's reexamination of a patent to aid its own validity and infringement deliberations.

Every court has the inherent power to use a stay to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants."

---

[6] *See also Standard Havens Prod., Inc., v. Gencor Indus., Inc.*, No. 93-1208, 1993WL 172432 (Fed. Cir. 1993); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *Microlinc, LLC v. Intel*, No. 2:07-cv-488, D.I. 154 (E.D. Tex. Sep. 16, 2008) (Ex. 6); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007); *EchoStar Techs.*, 2006 WL 2501494; *Nilssen & GEO Found., Ltd. v. Universal Lighting Tech., Inc.*, No. 3:04-0080, 2006 WL 38909 (M.D. Tenn. Jan. 5, 2006); *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F.Supp.2d 1360 (M.D. Fla. 2001); *Softview Computer Prods.*, 2000 WL 1134471; *ASCII Corp.*, 844 F. Supp. at 1381; *Robert H. Harris Co., Inc. v. Metal Mfg. Co. Inc.*, 19 U.S.P.Q.2d (BNA) 1786, 1788 (E.D. Ark. June 21, 1991); *Grayling Indus., Inc. v. GPAC, Inc.*, No. 1:89-CV-451-ODE, 1991 WL 236196 (N.D. Ga. Mar. 25, 1991); *Emhart Indus., Inc. v. Sankyo Seiki Mfg.*, No. 85C7565, 1987 WL 6314 (N.D. Ill. Jan. 30, 1987).

*See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  This Court, as well as others, have not only stayed litigation where the PTO has granted reexamination (as in this case), but have also done so where a request for reexamination is pending before the PTO.  *Ohio Willow Wood*, NO. 2-04-CV-1223, D.I. 80 (Ex. 7).  At least one court has even granted a stay where the request had yet to be filed.  *See ASCII Corp.*, 844 F.Supp. at 1380.  The Court has the "inherent power to manage [its] dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  *Lincoln Elec.*, 2007 WL 2670039, at *1 (quoting *Ethicon*, 849 F.2d at 1426-27).

Finally, granting a stay pending reexamination is squarely in line with the intent of Congress in formulating the reexamination statute.  Congress intended that courts should exercise their discretion to issue stays where warranted.  *See* H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980) (stating "it is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure").  Furthermore, Congress viewed reexamination providing "a useful and necessary alternative for challengers and for patent owners to test the validity of  ... patents in an efficient and relatively inexpensive manner."  *Id.*; *see also Ohio Willow Wood*, 2008 WL 4683222 at *2 ("Congress intended the reexamination process to provide an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the [PTO]'s expertise."  Quoting *Ethicon*, 849 F.2d at 1426).

### III.  CONCLUSION

The relevant factors in this case weigh heavily in favor of a stay of this litigation during reexamination of the '043 patent.  The decision to grant a stay is within the Courts' inherent power and is proper where the benefits of reexamination outweigh any prejudice to the

13

plaintiff resulting from the delay in trying the case. Allowing this litigation to proceed at this early stage in tandem with the reexamination, when there is no conceivable prejudice to Lear and when it is clear that at least some of the claims of the '043 patent will not survive reexamination, would defeat the very purpose of reexamination by increasing costs to both the court and the parties and by depriving the court of a convenient avenue to simplify this litigation. Thus, a stay in this case is the proper course. Therefore, TS Tech respectfully requests that this Court grant a stay of all litigation in this case pending conclusion of the reexamination of the '043 patent.

Dated:  December 22, 2009               Respectfully Submitted,

*/s/ Mary Ellen Fairfield*____
Mary Ellen Fairfield, Trial Attorney (0016128)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, OH 43216-1008
(614) 464-6335 / Fax: (614) 719-4704
E-mail: mefairfield@vorys.com

Nicholas L. Coch (admitted *pro hac vice*)
Vito J. DeBari (admitted *pro hac vice*)
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100 / Fax  (212) 715-8000
E-mail: ncoch@kramerlevin.com
E-mail: vdebari@kramerlevin.com

*Attorney for Defendants TS Tech USA, Corporation, TS Tech North America, Inc. and TS Tech Canada, Inc.*

14

## CERTIFICATE OF SERVICE

A copy of the foregoing *Memorandum In Support Of Defendants' Motion for Stay Pending Reexamination* was served upon counsel and parties via the Court's CM/ECF System, this 22nd day of December 2009.

*/s/ Mary Ellen Fairfield*_____

Mary Ellen Fairfield, Trial Attorney
